IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:20-cv-01051 |
| | § | |
| CITY OF SAN ANTONIO, TEXAS | § | |
| | § | |
| *Defendant*. | § | |

___

# COMPLAINT

Plaintiff, the United States of America, by the undersigned attorneys, alleges the following:

1. This action is brought by the United States to enforce the provisions of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043, against the City of San Antonio, Texas (hereinafter "San Antonio" or the "City") for illegally auctioning the motor vehicles and personal effects of SCRA-protected servicemembers since at least October 24, 2012.

2. The purpose of the SCRA is to provide servicemembers with protections against certain civil proceedings that could adversely affect their legal rights while they are in military service. One of those protections is the requirement that a person holding a lien on the property or effects of a covered servicemember obtain a court order prior to enforcing the lien. The court may stay the proceedings for a period of time or adjust the obligation to preserve the interests of all parties.

3. San Antonio does not determine whether the motor vehicles they auction, sell, or otherwise dispose of are owned by SCRA-protected servicemembers.

4. By failing to obtain court orders before auctioning the motor vehicles and personal effects of protected servicemembers, San Antonio prevented servicemembers from obtaining a court's review of whether the lien sales should be delayed or adjusted to account for their military service.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 50 U.S.C. § 4041.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the actions or omissions giving rise to the United States' allegations occurred in the Western District of Texas. Venue is proper in the San Antonio Division because all or a substantial part of the events or omissions giving rise to this cause of action took place at or near San Antonio, Texas.

## DEFENDANT

7. Defendant San Antonio is a municipality organized and existing under the laws of the State of Texas, and its agencies and departments are governed by the provisions of the Charter of the City of San Antonio 1951 (2015 ed.).

8. San Antonio is authorized by law to control and maintain all agencies and departments of the City.

## SERVICEMEMBERS

9. Paula Rangel is a Staff Sergeant ("SSgt") in the United States Air Force. At all times relevant to this action, SSgt Rangel was an active-duty servicemember, as defined in 10 U.S.C. § 101(d)(1).

10. Joshua White was a Specialist ("SPC") in the United States Army from October 21, 2009 to January 31, 2018. At all times relevant to this action, SPC White was an active-duty servicemember, as defined in 10 U.S.C. § 101(d)(1).

**FACTUAL ALLEGATIONS**

11. On December 22, 2016, the Department of Justice (the "Department") received a referral from a Department of the Air Force attorney regarding a complaint about San Antonio's compliance with Section 3958 of the SCRA, 50 U.S.C. § 3958.

*San Antonio's Practice of Towing and Auctioning Motor Vehicles*

12. In San Antonio, law enforcement tows of motor vehicles are initiated by the San Antonio Police Department ("SAPD"), a municipal law enforcement agency that is organized and operated as an administrative department of the City.

13. San Antonio contracts and subcontracts with local towing companies to perform its law enforcement tows of motor vehicles.

14. All wrecked, abandoned, and recovered vehicles towed by companies at the direction of the SAPD are brought to a vehicle storage facility located at 3625 Growdon Road, San Antonio, Texas 78227 ("Growdon Road Facility") that is owned by the City.

15. Vehicle storage and vehicle auction operations at the Growdon Road Facility are conducted by a private contractor acting as San Antonio's agent.

16. From October 1, 2011 to April 12, 2017, vehicle storage and auction operations at the Growdon Road Facility were conducted by United Road Towing, Inc. d/b/a UR Vehicle Management Solutions ("United Road").

17. On February 6, 2017, United Road filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

On April 12, 2017, the Bankruptcy Court approved the sale of United Road to its largest creditor, Medley Capital Corporation.

18. From April 12, 2017 to September 30, 2017, vehicle storage and auction operations at the Growdon Road Facility were conducted by Medley Capital Corporation d/b/a URT Acquisition Holdings Corporation.

19. Since October 1, 2017, vehicle storage and auction operations at the Growdon Road Facility have been conducted by Alanis Wrecker Service, LLC.

20. After an abandoned motor vehicle is taken into custody at the Growdon Road Facility, a written notice of abandonment is sent by registered or certified mail to the last known registered owners of the motor vehicle and any recorded lienholder. Tex. Transp. Code § 683.012.

21. If the motor vehicle is not reclaimed by the owner or lienholder within twenty days of the date of the notice, the vehicle can be disposed of by public auction after a public advertisement in the local newspaper. Tex. Transp. Code § 683.014.

22. Following the sale of vehicle, San Antonio and/or its agent deducts from the proceeds of the sale: (1) the cost of the auction; (2) towing, preservation, and storage fees resulting from taking the vehicle into custody; (3) the cost of the notice or publication; and (4) any compensation that the SAPD has made to property owners whose property was damaged as a result of a pursuit involving the motor vehicle. Tex. Transp. Code § 683.015(a).

23. After deducting allowable fees, San Antonio and/or its agent holds the remaining proceeds of the sale for 90 days for the owner or lienholder of the vehicle. Tex. Transp. Code § 683.015(b).

24. If the remaining proceeds of the sale are unclaimed after 90 days, they may be used for the payment of auction, towing, preservation, storage, and notice and publication fees resulting

from taking other vehicles into custody, if the proceeds from the sale of the other vehicles are insufficient to meet those fees. Alternatively, San Antonio may transfer the funds to its general revenue account. Tex. Transp. Code § 683.015(d).

25. Vehicles that are not claimed by their owners or lienholders and are not sold at auction are sold for scrap.

26. San Antonio has no written policies or procedures regarding SCRA compliance in conducting its abandoned vehicle auction operations.

*San Antonio's Pattern or Practice of Auctioning Vehicles Owned by Servicemembers*

27. At no point does San Antonio determine whether the owners of any vehicles it auctions, sells or otherwise disposes of are SCRA-protected servicemembers.

**Staff Sergeant Paula Rangel**

28. On February 5, 2013, SSgt Rangel enlisted and entered active duty in the United States Air Force.

29. In April 2016, SSgt Rangel deployed to Afghanistan from Joint Base San Antonio-Fort Sam Houston for a 179-day tour. Before she left for Afghanistan, SSgt Rangel left the keys to her vehicle, a 2015 Hyundai Sonata, with her roommate.

30. On or about August 18, 2016, SSgt Rangel's roommate was driving her vehicle and got into an accident. Following the accident, SAPD ordered the vehicle towed to the Growdon Road Facility.

31. At the time that SSgt Rangel's vehicle was towed and impounded, the vehicle contained certain personal effects, including military equipment that had been furnished to SSgt Rangel for her use.

5

32. On or about August 24, 2016, another friend informed SSgt Rangel that she had received a letter informing her that her car had been impounded. The letter stated that if SSgt Rangel did not claim her vehicle within thirty days, it would be sold at auction.

33. While in Afghanistan, SSgt Rangel executed a special power of attorney designating her roommate as her attorney-in-fact to retrieve the vehicle.

34. When SSgt Rangel's attorney-in-fact attempted to claim the vehicle and her personal effects, employees at the Growdon Road Facility refused to accept the power of attorney or release her motor vehicle or her personal effects.

35. SSgt Rangel also sought help from a military legal assistance attorney. The military legal assistance attorney called the Growdon Road Facility on SSgt Rangel's behalf, but was unable to get the Growdon Road Facility to release her vehicle.

36. SSgt Rangel's First Sergeant also went to the Growdon Road Facility and attempted to claim the vehicle and retrieve the personal property and military equipment that had been stored inside the vehicle. Employees at the Growdon Road Facility refused to allow SSgt Rangel's First Sergeant to have access to her vehicle.

37. On September 21, 2016, San Antonio and/or its agent sold SSgt Rangel's vehicle at auction for $6,600, without obtaining a court order.

38. The Department of Defense's Defense Manpower Data Center ("DMDC") website shows that SSgt Rangel was an active-duty servicemember when her motor vehicle was towed, put up for auction, and sold. The DMDC is the central source for identifying, authenticating, and providing information on Department of Defense personnel, including verifying servicemembers' active duty status and eligibility for the rights and protections granted by the SCRA.

39. At the time of the sale, SSgt Rangel still owed approximately $19,000 on the loan she had used to finance the purchase of the vehicle.

**Specialist Joshua White**

40. From October 21, 2009 to January 31, 2018, SPC White served on active duty in the United States Army.

41. During the late summer of 2015, SPC White was ordered to attend several weeks of field training exercises at Fort Hood. While in the field, he left his 2007 Yamaha Warrior motorcycle parked in the parking lot of his apartment complex in San Antonio.

42. The motorcycle was registered to SPC White at an address located on the Fort Hood military installation.

43. On or about September 1, 2015, SPC White's motorcycle was towed to the Growdon Road Facility.

44. When SPC White returned to San Antonio after his training exercise, he noticed that his motorcycle was gone and assumed that it had been stolen. He filed a missing property report with SAPD, but SAPD never informed him that the motorcycle had been towed.

45. On or about October 21, 2015, San Antonio and/or its agent sold SPC White's motorcycle at auction for $1,432 without obtaining a court order.

46. The DMDC shows that SPC White was an active-duty servicemember when his motor vehicle was towed, put up for auction, and sold.

47. At the time of the sale, SPC White still owed approximately $8,300 on the loan he had acquired to finance the purchase of the motorcycle.

**Other Servicemembers**

48. During its investigation of San Antonio, the Department determined that at least 227 of the vehicles that San Antonio had auctioned since October 24, 2012 were registered to owners who: (1) were in military service on the date of the auction; (2) had left military service within the 90 days immediately preceding the date of the auction; or (3) were members of a reserve component who had received orders to report for military service.

49. Of these 227 vehicles, at least twenty-seven (27) were registered to addresses that were associated with a military barracks or on-post military housing and listed the name of the military installation as a part of the address.

## SERVICEMEMBERS CIVIL RELIEF ACT VIOLATIONS

50. By the conduct described in the foregoing paragraphs, San Antonio has enforced liens on the property or effects of SCRA-protected servicemembers without authorizing court orders, in violation of 50 U.S.C. § 3958.

51. The SCRA provides two alternative bases under which the Attorney General may sue to enforce the statute, either one of which is sufficient to support this lawsuit. See 50 U.S.C. § 4041(a)(1) and 4041(a)(2).

52. By auctioning the motor vehicles and personal effects of SCRA-protected servicemembers without court orders, San Antonio has:

>   a. engaged in a pattern or practice of violating Section 3958(a)(1) of the SCRA, 50 U.S.C. § 3958(a)(1), thus triggering the Attorney General's authority to sue under 50 U.S.C. § 4041(a)(1); and/or
>
>   b. engaged in violations of Section 3958(a)(1) that raise an issue of significant public importance, thus triggering the Attorney General's authority to sue under 50 U.S.C. § 4041(a)(2).

53. The servicemembers whose motor vehicles were auctioned, sold, or otherwise disposed of without authorizing court orders in violation of the SCRA are aggrieved persons and have suffered damages as a result of San Antonio's conduct.

54. San Antonio's conduct was intentional, willful, and taken in disregard for the rights of servicemembers.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an ORDER that:

1. Declares that San Antonio's actions, policies, and practices, as alleged herein, violate the SCRA;

2. Declares that San Antonio has engaged in a pattern or practice of violating the SCRA that raises an issue of significant public importance;

3. Enjoins San Antonio, its officers, employees, agents, successors, and all other persons in active concert or participation with any of them, from:

    a. enforcing liens on the motor vehicles of SCRA-protected servicemembers without court orders, in violation of Section 3958 of the SCRA, 50 U.S.C. § 3958;

    b. failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of San Antonio's illegal conduct to the position he or she would have been in but for that illegal conduct; and

    c. failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any illegal conduct in the future and to eliminate, to the extent practicable, the effects of San Antonio's illegal conduct;

4. Awards appropriate monetary damages to each identifiable victim of San Antonio's violations of the SCRA; and

5. Assesses civil penalties against San Antonio in order to vindicate the public interest, pursuant to 50 U.S.C. § 4041(b)(3).

The United States further requests such additional relief as the interests of justice may require.

Dated: September 3, 2020

Respectfully submitted,

WILLIAM P. BARR
Attorney General

JOHN F. BASH
United States Attorney
Western District of Texas

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section
Civil Rights Division

*/s/ James E. Dingivan*
JAMES E. DINGIVAN
(TX Bar No. 24094139)
Assistant United States Attorney
Western District of Texas
601 N.W. Loop 410, Ste 600
San Antonio TX, 78216
Tel: (210) 384-7372
Fax: (210) 384-7312

ELIZABETH A. SINGER
Director, U.S. Attorneys' Fair Housing Program

AUDREY M. YAP
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, NW – NWB 7091
Washington, D.C. 20530
Tel: (202) 305-0115
Fax: (202) 514-1116

Attorneys for the United States